STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. WIL-
LIAM GIMBEL, PLAINTIFF IN ERROR.

Argued May 21, 1930—Decided October 20, 1930.

For the plaintiff in error, *John A. Bernhard* and *Joseph M. Degnan.*

For the defendant in error, *Joseph L. Smith,* prosecutor, and *Joseph E. Conlon,* assistant prosecutor of the pleas.

The opinion of the court was delivered by

WALKER, CHANCELLOR. The defendant, William Gimbel, was tried and convicted in the Essex Oyer and Terminer, of murder in the first degree for the killing of Paul Bohrer, on January 16th, 1930, and, there being no recommendation for life imprisonment, the defendant was sentenced to death. He brings error into this court, where the argument of his appeal is rested upon two propositions, (a) exceptions to the charge of the court as delivered, and (b) refusal to charge as requested by defendant.

The facts in the case are shortly these : On Janary 16th, 1930, defendant (twenty years of age) left his house, 46 New street, Belleville, about six-thirty o'clock A. M., carrying on his person a thirty-eight-calibre revolver, which he had stolen from the factory where he worked. The gun was fully loaded. At twelve-forty-five o'clock P. M., he entered the Atlantic and Pacific Tea Store, Belleville, as a young lady, the only customer, was leaving. The manager and a clerk were within. Defendant drew the revolver from his right-hand overcoat

pocket and said: "Stick 'em up," and also, "make it snappy or I'll plug you full of leads." The manager, under orders from defendant, went to the cash register and emptied its contents on the counter; he placed the money in a bag and then on orders from the defendant, he took off his wrist watch and placed that in the bag with the money. The clerk was standing in the rear of the store in accordance with orders from defendant, who, after taking the money and the wrist watch, ordered the manager and clerk to the rear of the store where he put them in a small room adjoining and closed the door and told them that if they left within five minutes he would "plug them full of lead."

Defendant then made his escape from the back door of the store and proceeded to run away, having in his possession the paper bag containing $57.81 cash belonging to the Atlantic and Pacific store, the wrist watch and the gun which he had used in the robbery. He walked down certain streets and thinking that he had been seen, started to run away. He ran through several streets and lots and during his flight was pursued by Paul Bohrer (deceased), Edward Maurer, the manager of the store, and several other persons. A Dodge truck was standing on the street and defendant approached it, apparently thinking the driver was on it and that he would make the driver take him away and that he would thus be enabled to make his escape. There was no driver on the truck, but Bohrer and Maurer were in the street in its rear. Gimbel fired two shots at these men, one bullet hit Bohrer in the abdomen, passing backward and downward to the right, through the vital organs and out of the body on the right side of the spine, as a result of which the stricken man afterwards died. Defendant then mounted the truck and continued his efforts to escape. He abandoned the truck near the building of the Federal Leather Company, which was between one and two miles away from the place where he mounted the truck. He entered the office of the leather company and asked the clerk at the information desk to call a taxicab for him. While in the office the manager entered, still in pursuit of the defendant. The latter hid behind the door and as the

manager came in he ran out again and continued his flight; he ran into an office and engaged a taxicab. He got into the rear seat of the cab, with the driver in his seat. At that moment one of the Belleville policemen, who was pursuing him in a police automobile, saw the defendant in the taxicab, jumped out of the police car, ran over to the taxi, where the defendant was making an effort to get his revolver out of his overcoat pocket. The officer grabbed the pocket and held up the gun and succeeded in getting it away from the defendant. He then grabbed the defendant and placed him under arrest.

On the same day defendant make a voluntary statement in writing, which was admitted in evidence in the case. It described the facts practically as above stated. It was an admission of guilt. When defendant was arrested there was found upon him the paper bag containing the money, and the wrist watch and the gun with which he shot the deceased.

In his statement he admits having fired two shots, but says he only fired one at the time he reached and boarded the truck and does not know if he hit anyone or not. But there was testimony showing he shot Bohrer.

It is contended that the court erred in the two following instructions:

1. "The defendant has not taken the stand, gentlemen. Under our law the defendant cannot be compelled to take the witness stand in his own behalf. However, the defendant, while not compellable, is competent to be a witness in his own behalf, but his failure to do so, to take the stand, raises no presumption of his guilt, nor should it be considered as prejudicial in respect to your determination as to whether or not you should attach to your verdict a recommendation of life imprisonment in case you find him guilty. However, if facts are testified to which are accusations against the defendant which he could by his oath deny, and he fails to take the stand in his own behalf, it raises a strong presumption that he cannot truthfully deny those facts."

2. "In view of the testimony that this murder was committed in the perpetration of a robbery, the defendant is either

guilty of murder in the first degree or he is not guilty. As I said to you a moment ago, if you believe the testimony of the state's witnesses, which testimony is uncontradicted, that the defendant, Gimbel, held up and robbed this grocery store and ran away, and in the course of being pursued shot and killed Paul Bohrer, he is guilty of murder in the first degree."

First. In the charge numbered 1, above, everything said therein is favorable to defendant, down to the last sentence, and that, while unfavorable, is nevertheless in accordance with the law. The defendant says that while his failure should not be considered prejudicial in respect to the jury's determination as to whether they should attach a recommendation of life imprisonment to their verdict, they have no right to do so as instructed, if defendant's failure to be sworn raised a strong presumption in the mind of the jury that he could not truthfully deny the facts; because he did not, under oath, deny the accusations made, the jury was precluded from exercising their discretion to affix life imprisonment as a part of their verdict

Plainly, the contention just stated does not follow and is unsound. There is no real objection to the charge of the court contained in the last sentence of paragraph 1 of the charge excepted to, namely, that if facts are testified to which were accusations against the defendant (and the facts testified to were such accusations), which he could by his oath deny (and that he could have done), and he fails to take the stand in his own behalf (and he so failed), it raises a strong presumption that he cannot truthfully deny those facts. That language is practically the same as was used by Mr. Justice Kalisch in the Supreme Court in *State* v. *Schlosser*, 85 *N. J. L.* 165, wherein he said that if the defendant can disprove facts testified against him, and fails to take the stand, his silence would justify a strong inference that he could not deny the charge. Affirmed, on the opinion of Mr. Justice Kalisch, 86 *Id.* 374. So the defendant is driven to this: that the court's instruction was so limited as to deny to the defendant the right of the jury to recommend imprisonment at hard labor for life as part of their verdict, under

*Pamph. L.* 1919, *p.* 303. Not so; the charge was clearly and unequivocally, and in express language, that the failure of defendant to take the stand "raises no presumption of his guilt, nor should it be considered as prejudicial in respect to your determination as to whether or not you should attach to your verdict a recommendation of life imprisonment, in case you find him guilty." The charge in respect to the presumption that defendant could not truthfully deny the facts testified to, by reason of his failure to be sworn as a witness, came as a concluding sentence in the same paragraph of the charge. It was entirely dissociated from the charge concerning an allowable recommendation of life imprisonment by the jury. And it is a plain distortion to argue that the latter is a limitation upon the former and must necessarily have constrained the jury not to consider a recommendation of imprisonment for life.

Second. Nor is there any error in the charge of the court numbered 2, above, that if the defendant held up and robbed the grocery store and ran away, and in the course of being pursued shot and killed deceased, he was guilty of murder in the first degree. The argument is that the court in effect instructed the jury that the circumstances of the shooting were part of the *res gestæ* of the robbery, regardless of the lapse of time and the distance which separated the two acts; that if the jury had been permitted to find that the robbery had been completed at the time defendant fired a shot, the court would have been under the legal duty to charge that the defendant could not be convicted of murder in the first degree, because the elements of willfulness, premeditation and deliberation necessary to such a crime dissociated from robbery, were not indicated to the jury by the court.

The robbery had not been completed so far as the killing in the perpetration of the robbery was present. *State* v. *Turco,* 99 *N. J. L.* 96, is entirely apposite on the question of robbery involved in this case. In the Turco case we held that when, incident to a robbery, one of the robbers kills a third party after the goods have been taken out of the possession of the owner (or his agents), while the robbery is

complete, so as to render the perpetrators liable to conviction for it, yet the killing being done in an attempt to conceal the crime, protect the robbers in the possession of the loot and facilitate their flight, is so closely connected with the robbery as to be a part of the *res gestæ* thereof, which may be an emanation of the act of robbery, and, although an act committed after the fact of robbery it still constitutes part of the *res gestæ* of that act, and is murder committed in the perpetration of a robbery within the meaning of our statute, and, consequently, murder in the first degree. The application of the Turco case to the facts of the one at bar is perfectly plain; and no more need be said on that subject.

Third. It is next argued that there was error in the court's refusal to charge specifications and assignments 8 and 9. As these had to do exclusively with the question of prejudice to the defendant because the court did not charge that defendant's failure to be sworn as a witness could not be considered by the jury as prejudicial to a recommendation of life imprisonment, or in making life imprisonment a part of their verdict in the event they found him guilty as charged, has already been disposed of in Point 1, above, and as the court's charge upon the question, which covered it entirely, was contained in that part of the instruction which had to do with defendant's refusal to take the stand and the effect thereof, it is entirely unnecessary further to review defendants attitude regarding that question. The whole subject is disposed of in the charge as delivered.

It may, however, be appropriate to remark that this court held in *State* v. *Kisik,* 99 *N. J. L.* 385, that a defendant in a criminal case is entitled to have the jury consider all of the facts in evidence, even if he does not deny those which concern his own acts, as he is entitled to the presumption of innocence, unless, and until, the jury have agreed on a verdict of conviction upon a consideration of all the evidence, and that beyond a reasonable doubt.

And that is exactly this case. Here the defendant was entitled to a presumption of innocence, but when the jury came

to consider his case they may have concluded, as was their right, that he could not deny the truth of fact alleged against him in the evidence, and which by his oath he could have denied, but did not because he was not sworn; and yet they may have convicted him because 'they believed the truth of his voluntarily written statement, acknowledging his guilt, and the evidence of the witnesses, quite irrespective of the fact that he did not take the stand and deny on oath the facts testified to, which proved, or tended to prove, his guilt; or it may be that the jury resolved all the salient facts against him, including those which he did not on oath deny, as they were warranted in doing, under the evidence in this case.

Let the judgment be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, CAMPBELL, LLOYD, CASE, BODINE, DALY, VAN BUSKIRK, McGLENNON, KAYS, HETFIELD, DEAR, WELLS, JJ.   14.

*For reversal*—None.