18 N.J. Super. 482 (1952)
87 A.2d 549
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOSEPH DOTO, ALIAS JOE ADONIS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 14, 1952.
Reargued March 10, 1952.
Decided March 24, 1952.
*484 Before Judges McGEEHAN, JAYNE and WM. J. BRENNAN, JR.
Mr. John E. Selser argued the cause for appellant (Messrs. Selser & Shenier, attorneys).
Mr. Joseph A. Murphy, Assistant Deputy Attorney-General, argued the cause for the State (Mr. Theodore D. Parsons, Attorney-General).
The opinion of the court was delivered by McGEEHAN, S.J.A.D.
On May 28, 1951, the defendant was sentenced on four indictments  Indictment 11, charging conspiracy, and Indictments 12, 20 and 16, each charging the keeping of a place to which persons may resort for gambling in violation of R.S. 2:135-3. He was sentenced *485 on Indictment 11 to not less than two nor more than three years in State Prison; on Indictment 12 to not less than two nor more than three years in State Prison and a fine of $5,000, the prison sentence to run concurrently with the prison sentence on Indictment 11; on Indictment 20 to not less than two nor more than three years in State Prison and a fine of $5,000, the prison sentence to run concurrently with the prison sentence on Indictment 11; and on Indictment 16 to not less than four nor more than five years in State Prison and a fine of $5,000, the prison sentence to run consecutively with the prison sentence on Indictment 11, but the operation of the prison sentence on Indictment 16 was suspended and the defendant placed on probation for a period of five years. On the appeals no question is raised about the sentence on Indictment 11, charging conspiracy, or about the amount of the fine or the period of imprisonment imposed on the other indictments.
Because the sentences on Indictments 12, 20 and 16 each impose a punishment of both fine and imprisonment, the defendant claims they are invalid. He relies on the 1940 amendment (L. 1940, c. 205, § 1) of R.S. 2:135-3, which provides that the crime charged in these indictments shall be punished "by a fine * * * or by imprisonment." (Italics ours.) The State relies on R.S. 2:135-3, as enacted on December 20, 1937, which provides that the crime charged in these indictments shall be punished "by a fine * * * and by imprisonment." (Italics ours.)
We find it necessary to set forth the statutory and constitutional provisions involved in the arguments.
L. 1894, c. 101, § 2 provided:
"That if any person or corporation shall habitually or otherwise conduct the practices commonly known as book making and pool selling, or either of them, or shall keep a place to which persons may resort for engaging in such practices, or either of them, or for betting upon the event of any horse race, or other race or contest, either within or without this state, or for gambling in any form, such person or corporation shall be deemed guilty of a misdemeanor, and on conviction thereof shall be punished by a fine of not less than one *486 thousand dollars nor more than five thousand dollars, and by imprisonment in the state prison for not less than one year nor more than five years."
In 1897, art. IV, sec. VII, par. 2 of the Constitution of 1844 was amended to read as follows:
"No lottery shall be authorized by the legislature or otherwise in this state; and no ticket in any lottery shall be bought or sold within this state, nor shall pool-selling, book-making or gambling of any kind be authorized or allowed within this state, nor shall any gambling device, practice or game of chance now prohibited by law be legalized, or the remedy, penalty or punishment now provided therefor be in any way diminished."
In 1898, a revision of the Crimes Act (L. 1898, c. 235) was enacted and the 1894 act was repealed (L. 1898, c. 236, § 1). Section 65 of the 1898 Crimes Act provided:
"Any person or corporation that shall habitually or otherwise, buy or sell what is commonly known as a pool, or any interest or share in any such pool, or shall make or take what is commonly known as a book, upon the running, pacing or trotting, either within or without this state, of any horse, mare or gelding, or shall conduct the practices commonly known as book-making and pool selling, or either of them, or shall keep a place to which persons may resort for engaging in such practices, or either of them, or for betting upon the event of any horse race, or other race or contest, either within or without this state, or for gambling in any form, or aiding, abetting or assisting therein, shall be guilty of a misdemeanor, and punished by a fine of not less than one thousand dollars, nor more than five thousand dollars, and by imprisonment in the state prison for not less than one year nor more than five years; and any corporation of this state convicted of offending against this section, shall be dissolved thereby, and its corporate franchises shall thereby become forfeited and void, without any other proceedings to that end."
The pertinent part of L. 1898, c. 235, § 65 was incorporated in the Revised Statutes of 1937 (L. 1937, c. 188) as R.S. 2:135-3, providing:
"Any person who shall habitually or otherwise, buy or sell what is commonly known as a pool, or any interest or share in any such pool, or shall make or take what is commonly known as a book, upon the running, pacing or trotting, either within or without this state, of any *487 horse, mare or gelding, or shall conduct the practices commonly known as bookmaking or pool selling, or shall keep a place to which persons may resort for engaging in any such practices, or for betting upon the event of any horse race, or other race or contest, either within or without this state, or for gambling in any form, or any person who shall aid, abet or assist in any such acts, shall be guilty of a misdemeanor, and punished by a fine of not less than one thousand dollars nor more than five thousand dollars, and by imprisonment in the state prison for not less than one year nor more than five years."
In 1939, art. IV, sec. VII, par. 2 of the 1844 Constitution was again amended to read as follows:
"It shall be lawful to hold, carry on, and operate in this State race meetings whereat the trotting, running or steeplechase racing of horses only may be conducted between the hours of sunrise and sunset on week days only and in duly legalized race tracks, at which the pari-mutuel system of betting shall be permitted. No lottery, roulette, or game of chance of any form shall be authorized by the Legislature in this State, and no ticket in any lottery shall be bought or sold within this State, or offered for sale; nor shall pool-selling, book-making, or gambling of any kind be authorized or allowed within this State, except pari-mutuel betting on the results of the racing of horses only, from which the State shall derive a reasonable revenue for the support of government; nor shall any gambling device, practice, or game of chance, or pari-mutuel betting thereon now prohibited by law, except as herein stated and otherwise provided, be legalized, or the remedy, penalty, or punishment now provided therefor be in any way diminished."
In 1940 (L. 1940, c. 205, § 1) R.S. 2:135-3 was amended to read as follows:
"Any person who shall habitually or otherwise, buy or sell what is commonly known as a pool, or any interest or share in any such pool, or shall make or take what is commonly known as a book, upon the running, pacing or trotting, either within or without this State, of any horse, mare or gelding, or shall conduct the practices commonly known as bookmaking or pool selling, or shall keep a place to which persons may resort for engaging in any such practices, or for betting upon the event of any horse race, or other race or contest, either within or without this State, or for gambling in any form, or any person who shall aid, abet or assist in any such acts, shall be guilty of a misdemeanor, and punished by a fine of not less than one thousand dollars nor more than five thousand dollars, or by imprisonment in the state prison for not less than one year nor more than five *488 years. Nothing in this section contained shall be construed to apply to pari-mutuel betting at race meetings as authorized by the Constitution of this State and any statute passed in pursuance thereof."
From 1894 down to the time of sentencing in 1951, the range of the fine and of the imprisonment which might be imposed for the crime charged remained the same; and from 1894 until the 1940 amendment, the punishment was both fine and imprisonment. The 1940 amendment reduced the punishment to either fine or imprisonment.
The defendant argues that the provision of R.S. 2:135-3, as amended in 1940, which makes the keeping of a place to which persons may resort for gambling a misdemeanor punishable by fine or imprisonment, is a valid enactment and that no constitutional limitation or question is involved. The State argues (1) that this provision of the 1940 amendment is unconstitutional; and (2) if it is not, that the balance of the 1940 amendment is unconstitutional and this provision, not being severable, must fall with the unconstitutional matter.
The provision of the 1940 amendment to R.S. 2:135-3 that the keeping of a place to which persons may resort for gambling is a misdemeanor punishable by fine or imprisonment, reduces the punishment provided for this crime by R.S. 2:135-3, as enacted December 20, 1937, which was in effect at the time of the adoption of the 1939 amendment to art. IV, sec. VII, par. 2 of the 1844 Constitution. The State contends that this provision is unconstitutional because a reduction in the penalty for this crime was prohibited by the 1939 constitutional amendment. To support this contention, the State relies upon the following language of the 1939 amendment: "nor shall any gambling device, practice, or game of chance * * * now prohibited by law * * * be legalized, or the remedy, penalty, or punishment now provided therefor be in any way diminished." (Italics ours.)
This language of the 1939 constitutional amendment relied on is identical with the language contained in the 1897 *489 constitutional amendment, which was construed in State v. Murzda, 116 N.J.L. 219 (E. & A. 1936). We consider the construction given in State v. Murzda, supra, to be controlling on us here.
In the Murzda case, it appeared that at the time of the adoption of the 1897 constitutional amendment, an existing statute denominated a misdemeanor the knowing possession of "any paper, document, slip or memorandum that shall pertain in any way to the business of lottery-policy, so-called." L. 1934, c. 133 classified as a disorderly person one "who shall have in his possession or custody any lottery slips, books or records pertaining to a lottery." The inquiry was whether the constitutional language, now under consideration, prohibited the Legislature from giving the offense there in question the lesser grade or classification, both in respect to its character and the punishment therefor, as attempted by L. 1934, c. 133. The court, in holding that this constitutional language contained no such prohibition, said:
"* * * it plainly refers to the play that is denominated gaming, and not to the mere possession of tickets, slips, books, records, or memoranda used in the conduct or operation of unlawful games. The legalization of all forms of gaming then prohibited by law, and the diminishment of `the remedy, penalty or punishment' prescribed `therefor' were the things placed beyond legislative control.

* * * * * * * *
Any doubt as to this is dispelled by the provision proscribing the sale and purchase of lottery tickets, notwithstanding that section 52 of the existing Crimes Act of 1874 denounced such offenses as misdemeanors. General Statutes 1895, p. 1059. Thus the sale and purchase of lottery tickets, as distinguished from the lottery itself, is made the subject of a specific inhibition, while the bare possession of such tickets is not. This is conclusive of an intention and purpose not to incorporate in the fundamental law the statutory provision relating to possession. It makes evident a design not to oust the Legislature of authority to deal with the mere possession of slips, papers and documents pertaining to that form of gaming. Moreover, it indubitably demonstrates that the term `gambling device' was used in the qualified, restricted sense mentioned; if not, the provision would be superfluous.
The statute denounces offenses, such as the keeping of a room or house for gaming purposes, and the landlord or his agent knowingly permitting the demised premises to be used for the conduct of a lottery *490 business, which are manifestly not within this limitation of legislative authority. The provisions of the revised Crimes Act of 1874 pertinent to this inquiry are sections 50-55, 222-226, 274-281, 284, and 285-287. General Statutes 1895, pp. 1059, 1060, 1090, 1101, 1102, 1103."
In the last paragraph of the above quotation from the Murzda case, the court specifically states that the offense of keeping a room or house for gaming purposes, denounced by L. 1894, c. 101, § 2 (cited in the opinion only by its compilation number in the General Statutes of 1895, namely, § 281, p. 1102) is "manifestly not within" the limitation of legislative authority contained in the 1897 constitutional amendment. As pointed out earlier in this opinion, L. 1894, c. 101, § 2 is the source of both R.S. 2:135-3 and the 1940 amendment thereof. The offense of keeping a place for gaming purposes, which was charged in Indictments 12, 20 and 16, is the identical offense denounced in L. 1894, c. 101, § 2, and dealt with in the Murzda opinion. Since the particular language of the 1897 constitutional amendment construed in the Murzda case was adopted without change in the 1939 constitutional amendment, and no claim is made that any new factor was introduced since the decision in the Murzda case which might affect the construction of this language, it must be given the same construction here.
It is also to be noted that the 1939 constitutional amendment not only introduced language to legalize pari-mutuel betting at duly authorized race tracks, but also added to the prohibitions contained in the 1897 amendment a further prohibition that no ticket in any lottery shall be "offered for sale." It is significant that no prohibition was added therein applying to the reduction in the punishment for the possession of lottery slips or for keeping a place for gambling purposes, despite the fact that in the Murzda case both were said to be outside the prohibition contained in the language actually carried forward from the 1897 amendment.
At the reargument, the State sought to overcome the force of the specific language in the Murzda opinion, by an argument *491 that this language "is one of dictum only and consequently neither binding nor controlling in the matter here at issue." We need not pause to consider whether it is dictum or not, because it is, at least, an inescapable corollary of the law of the case. State v. Baldinotti, 127 N.J.L. 46 (Sup. Ct. 1941).
We conclude that the reduction in penalty for the offense of keeping a place for gaming purposes, made in the 1940 amendment of R.S. 2:135-3, was not prohibited by the 1939 constitutional amendment.
The State next contends that, even though the Legislature had power to reduce the penalty for the crime charged in these three indictments, the whole 1940 amendment to R.S. 2:135-3 must fall, because the balance of the amendment is clearly unconstitutional and the valid provision, which is in question here, is not severable. The 1940 amendment reduced the punishment for four crimes: (1) buying or selling what is commonly known as a pool, or any interest or share therein; (2) making or taking a book on horse racing; (3) book-making or pool-selling; and (4) keeping a place to which persons may resort for the same or for gambling in any form. The State argues that a reduction in punishment for the first three crimes mentioned is clearly prohibited by the 1939 constitutional amendment.
The 1939 constitutional amendment provides: "nor shall pool-selling, book-making, or gambling of any kind be authorized or allowed within this State * * * nor shall any gambling device, practice, or game of chance * * * be legalized, or the remedy, penalty, or punishment now provided therefor be in any way diminished." It is clear that each of the first three crimes mentioned in the 1940 amendment constitutes a "gambling practice." At the time of the 1897 constitutional amendment, in which the words "gambling practice" were used, L. 1894, c. 101, § 2 was in effect, and this last-mentioned act denominated bookmaking and pool-selling as gambling practices. They were also denominated gambling practices by R.S. 2:135-3, which was in *492 effect at the time of the adoption of the 1939 constitutional amendment.
The appellant concedes that the reduction in the penalty for the first three crimes mentioned in the 1940 amendment is prohibited by the constitutional amendment, but argues that the fourth crime mentioned, which is the crime charged in the indictments in question, is severable and should be permitted to stand, although the reduction in penalty for the first three crimes mentioned must fall.
In Washington National Ins. Co. v. Board of Review, 1 N.J. 545, 556 (1949), the rule as to severance of statutes is set forth as follows:
"Severability is a question of intention. * * * The rule of severance is in aid of the intention; and to be capable of separate enforcement, there must be such manifest independence of the parts as to clearly indicate a legislative intention that the constitutional insufficiency of the one part would not render the remainder inoperative. The doctrine of separability is one to be applied with caution, for in the enforcement of valid elements of a statute containing invalid elements also, there is danger of judicial usurpation of the legislative power."
The application of the rule of severance, advocated by the appellant, would leave only the offense of keeping a place for gambling as a crime carrying a punishment, and the first three crimes mentioned in the 1940 amendment would no longer be punishable either under R.S. 2:135-3 or under the 1940 amendment, since the 1940 amendment to R.S. 2:135-3, if valid in any part, supersedes the original R.S. 2:135-3. The mere statement of this result, which would follow the application of the rule of severance, makes it apparent that the Legislature did not intend to have this single provision stand if part or all of the balance of the amendment should be stricken as unconstitutional. "If the enforcement of a statute with a constitutionally vicious provision eliminated `would cause results not contemplated or desired by the legislature, then the entire statute must be held inoperative.'" Rutgers Chapter, &c., v. New Brunswick, *493 129 N.J.L. 238 (Sup. Ct. 1942), affirmed 130 N.J.L. 216 (E. & A. 1943). An essential factor in the application of the rule of severance is a finding of a clear indication of a legislative intention that it should be applied. Here, we find a clear indication of a legislative intention that the rule should not apply. The entire 1940 amendment must fall with its unconstitutional parts. Cf. Washington National Ins. Co. v. Board of Review, supra; Rutgers Chapter, &c., v. New Brunswick, supra.
The sentences imposed are valid and the judgment is affirmed.