20 N.J. Super. 1 (1952)
89 A.2d 76
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
WILLIAM J. HOGAN, JR., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 5, 1952.
Decided May 19, 1952.
*4 Before Judges EASTWOOD, BIGELOW and FRANCIS.
Mr. Albert M. Ash, Prosecutor of Cape May County, argued the cause for the plaintiff-respondent.
Mr. J.W. Acton, attorney for and of counsel with defendant-appellant, argued the cause.
The opinion of the court was delivered by EASTWOOD, S.J.A.D.
The defendant, William J. Hogan, Jr., by this appeal contends that he was erroneously convicted upon an indictment charging him with "bookmaking" in violation of R.S. 2:135-3.
The indictment in question charged that: "William J. Hogan, Jr., between the First day of January, 1950, and the First day of March, 1950, and on divers other days and times prior and subsequent thereto, in the City of Wildwood, in the County of Cape May, aforesaid, and within the jurisdiction of this Court, willfully and unlawfully did make and take what is commonly known as a book, upon the running of horses, mares and geldings, contrary to the provisions of R.S. 2:135-3, and against the peace of this State, the Government and dignity of the same." The defendant did not testify, nor did he offer any witnesses in his defense.
The State presented seven witnesses who testified to bookmaking operations over a period of two years. Leolin Tice, a bookmaker, stated that he personally made bets on the results of horse races with the defendant for a year during 1949; that early in 1950, Hogan arranged with Tice to take care of his (Hogan's) horse bettors; that the business conducted by Hogan and that which Tice handled for Hogan was bookmaking; and that Hogan employed one Milton Kirby at $25 weekly to pay off and collect bets for him.
James Spring, another bookmaker, testified that Hogan employed him to run the bookmaking operation at his (Hogan's) home and that in August, 1950, he took bets over the telephone and personally. He testified that he telephoned *5 "lay-off" bets to a Tom Edge, in Wilmington, Delaware; that he turned the run-down sheets over to Hogan who did most of the collecting; that Hogan was often in the house during the operation; that he only knew about five per cent of Hogan's customers, some of whom he never saw, and that most of the time he turned the "tally sheets" showing what the bettors owed on the book over to William Hogan who went out to do the collecting, as well as the pay-off work; that he and Hogan each received 50 per cent of the profits from the operation and the earnings between August and December, 1950, were approximately $20,000; that Spring sent two Western Union money orders for $500 each out of the bookmaking earnings to Hogan when he was in Florida.
At the close of the State's case, the court denied the defendant's motion for a judgment of acquittal on the asserted ground that the crime charged had not been proven.
Upon the defendant's failure to take the stand or offer any testimony in his own defense, the case was submitted to the jury, which returned a verdict of guilty. The court thereafter imposed the sentence of a fine of $4,000 and imprisonment in the county jail for a term of nine months.
On appeal, the defendant asserts the following grounds for reversal: (1) that the trial court erred in denying his motion for a bill of particulars; (2) that the trial court erred in failing to grant his motion for acquittal on the ground that the crime alleged in the indictment, not having been particularized by a bill of particulars, was not established by the evidence adduced by the State; (3) that the trial court committed error in its instructions to the jury commenting upon defendant's failure to testify, the defendant asserting that he was not obliged to refute the proof of a crime not charged in the indictment; (4) that the trial court erred in its definition of bookmaking; (5) that the trial court erred in refusing to permit cross-examination of the State's witness, James Spring, as to an alleged deal with the Prosecutor; and (6) that the trial court erred in the sentence imposed upon the defendant.
*6 The demand for particulars, referred to in defendant's first allegation of error, was similar to one denied in another case pending before the court. In the instant case, it was stipulated by the prosecutor and counsel for the defendant that the court's disposition of that application would be determinative of the defendant's application. Our review of the indictment indicates that the offense charged is one which implies a continuity of operation or non-instantaneous act; that its character is reasonably understood and that the time of the commission of the offense is designated with reasonable particularity.
As to the particularity of the offense charged, it is said in State v. Morano, a bookmaking case, 134 N.J.L. 295 (E. & A. 1946), at pp. 296, 297:
"Certainty of description of the offense charged is a prime requisite of an indictment. This requirement that the alleged criminal act be laid in certain and identifiable form is grounded in the accused's right to such specification of the accusation as may be needful for the preparation of his defense and the interposition of a plea of autrefois convict or autrefois acquit in the event of a further prosecution for the same offense. The accused has a constitutional right `to be informed of the nature and cause of the accusation' levelled against him. State Constitution, Article I, paragraph 8. It is a corollary of this principle that an offense may be charged in the words of the statute, if the statute describes it in terms that in themselves import with certainty the elements of the offense, and thus the allegation satisfies the accused's fundamental rights. The statutory language need be supplemented only where necessary to particularize and identify the offense that would otherwise be indefinite and uncertain because of the generality of the statutory language." And cases cited.
Granting an application for a bill of particulars is a discretionary matter with the court. State v. Lyon, 45 N.J.L. 272 (Sup. Ct. 1883); State v. Newman, 98 N.J.L. 294 (E. & A. 1922); State v. Shapiro, 89 N.J.L. 319 (E. & A. 1916); State v. Davis, 6 N.J. Super. 162 (App. Div. 1950). Assuming, but not conceding, that defendant was entitled to the particulars demanded, in view of his contention that, at best, the State's evidence only established *7 his guilt for aiding and abetting for which he was not indicted, he was certainly not harmed by the court's denial. It does not appear by the record that the court approved the foregoing stipulation or agreed to be bound thereby, nor was any order entered by the court denying defendant's application for the particulars. We doubt very much whether, under the circumstances, the stipulation entered into by the prosecutor and defendant's counsel could have any binding effect upon the court. At all events, it does not appear that the trial court abused its discretion in denying defendant's application for the bill of particulars.
In considering the defendant's second ground for reversal of the judgment of conviction, we reach the conclusion that the court properly denied the defendant's motion for acquittal at the end of the State's case. Under Rule 2:7-7, a judgment of acquittal in the place of a motion for a directed verdict may be made by the defendant. The test generally recognized when such a motion is made, is whether there is any evidence from which an inference of guilt may be drawn. State v. Fox, 12 N.J. Super. 132 (App. Div. 1951). In order to justify a conviction, the circumstances on which the State relies must be consistent with the defendant's guilt and inconsistent with any rational theory of innocence. State v. Donohue, 2 N.J. 381 (1949). The defendant contends that the State failed in its attempt to establish by the evidence that Mr. Hogan actually "did take and make a book"; that the State's evidence did not pertain to the exact crime charged against the defendant in the indictment and that it only gave "rise to a logical inference" that the defendant Hogan had "aided, abetted or assisted in the making of books on horse races, but such evidence does not establish the crime set forth in the indictment." We find no merit in the defendant's contentions. The issue raised by the defendant has been decided adversely to his contention in the case of State v. Morano, supra, wherein Mr. Justice Heher, speaking for the court, stated:
*8 "* * * The argument is that there is no evidence that any of the defendants `made or accepted any bets as principals, or had the responsibility, as bookmakers, of paying off any bets that were made,' and, `at best,' they were mere aiders or abettors, and were not indicted as such; and that where, as here, a statute renders aiding, abetting or assisting in the commission of a misdemeanor a separate and distinct offense, the general rule that such aiders and abettors are indictable as principals is not applicable.
Under the common law, all who are present, aiding and abetting in a felony, are treated as principals, while in the case of misdemeanors all who aid, abet or participate are deemed principals of equal guilt; and the statute under consideration is in this regard merely declaratory of the common law. State v. Woodworth, 121 N.J.L. 78. The principle was given recognition by this court in State v. Flynn, 76 N.J.L. 473."
Cf. State v. Seaman, 10 N.J. Super. 439, 444, 445 (App. Div. 1950); certif. den., 6 N.J. 456 (1951). At the conclusion of the State's case, as clearly appears from a reading of the record and the condensed factual recital hereinabove set forth, we find that there was plenary evidence from which the jury might properly infer, as it evidently did, that the defendant was guilty of the crime charged in the indictment.
We find no error in the court's instructions respecting the defendant's failure to testify. "The court cannot state the law of the case in a single sentence and the charge must be read as a whole in the light of a sensible construction to determine its legal worth." State v. Tansimore, 3 N.J. 516 (1950). In the instant case, there was direct proof of particular guilt or inculpatory acts which, if they were untrue, the defendant, by taking the stand as a witness, could have specifically denied or contradicted, but he chose not to do so. The court's charge conformed to the settled rule as established in the cases of State v. Gimbel, 107 N.J.L. 235 (E. & A. 1930); State v. Friedman, 136 N.J.L. 527 (E. & A. 1948).
The defendant contends that the court erred in defining the crime of bookmaking as follows: "bookmaking is the business of accepting bets on the outcome of horse racing." However, the defendant fails to state that preceding this definition, the court also charged as follows:
*9 "Now the pertinent portion of the statute which the defendant is accused of violating, the Revised Statutes 2:135-3, is as follows: `Any person who shall make or take what is commonly known as a book upon the running, pacing or trotting, either within or without the State, of any horse, mare or gelding shall be guilty of a misdemeanor.'"
See State v. Morano, supra. We perceive no error in this instruction.
The next assignment of error relied upon by the defendant is the trial court's ruling sustaining the State's objection to the following question propounded to the State's witness, Spring, on cross-examination: "You made a deal with the Prosecutor, didn't you?" Prior to the trial of the instant matter, Spring had been convicted and sentenced on a bookmaking charge and after serving a short time in jail, was paroled by order of the court. The defense in posing the aforementioned question, failed to indicate any matter concerning which the alleged deal was made, nor did he indicate the time or place when or where such a deal was made. When the court sustained the State's objection, counsel for the defendant did not offer any reason for the interrogation and failed to advance any grounds in support of its admissibility. The defense failed to interpose an objection to the trial court's action. Rule 1:2-19(a) provides: "In criminal causes, * * * Error in the admission or rejection of testimony, * * * shall be cause for reversal if specific objection thereto was made and it appears from the entire record of the proceedings had upon the trial that the defendant thereby suffered manifest wrong or injury." Further, Rule 3:43-2 provides that: "In an action tried by a jury, if an objection to a question propounded to a witness is sustained by the court, the examining attorney may make a specific offer of what he expects to prove by the answer of the witness." With respect to the latter rule, the defendant did not make any offer of what he expected to prove by the answer of the witness. So far as the record indicates, the cross-examining counsel had no information regarding any deal between the *10 witness and the prosecutor and "was making a flare on the chance that the answers might contain something helpful to defendant(s). The practice by which a foundation is laid for the contradiction of a witness does not sustain a `fishing' expedition by way of cross-examination." State v. Simon, 115 N.J.L. 207, 208 (E. & A. 1935). Cf. State v. Conner, 97 N.J.L. 423, 424 (Sup. Ct. 1922); State v. Juliano, 103 N.J.L. 663, 676 (E. & A. 1927). Under the circumstances, we think the court properly sustained the State's objection. See State v. Bartell, 15 N.J. Super. 450, 454, 455 (App. Div. 1951).
In his sixth allegation of error, that the trial court erred by sentencing the defendant to pay a fine of $4,000 and imprisonment for a term of nine months, the defendant argues that under the authority of L. 1940, c. 205, one convicted of bookmaking might be punished by the imposition of either a fine or by imprisonment, but not both. This question has been recently determined in the case of In re DeFalco, 9 N.J. 236 (1952), wherein the Supreme Court held that this provision of the 1940 statutory amendment was violative of the 1939 amendment to Article IV, Sec. VII, par. 2, of the 1844 Constitution, providing that the remedy, penalty, or punishment now provided therefor shall not be in any way diminished. In the DeFalco case, Mr. Justice Wachenfeld, speaking for the Supreme Court, stated:
"It is urged any constitutional defect in this regard, in the 1940 statute, has been corrected by the adoption of the 1947 Constitution, which contains no limitation on the Legislature's power to increase or diminish the penalties for the enumerated offenses.
The argument is without merit. A statute which is unconstitutional at the time of its enactment does not acquire a valid status simply by reason of a subsequent amendment to the basic charter or by the adoption of a new one."
Cf. State v. Doto, 18 N.J. Super. 482 (App. Div. 1952).
Affirmed.