STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. ANTONIO TURCO, PLAINTIFF IN ERROR.

Argued September 13, 1923—Decided November 19, 1923.

1. Where the names of forty-eight jurors are drawn from the general panel for service upon defendant in a criminal case, and the court orders twenty-four additional talesmen to be drawn in the manner provided by law, and the defendant is served with a copy of the indictment and the panel of forty-eight jurors, including the additional twenty-four, and at the trial the forty-eight names are placed in the box and exhausted without twelve traverse jurors being selected, and then the names of the twenty-four talesmen are put in the box and the drawing proceeds from that number until the jury is complete—*Held,* correct.

2. When a juror answers on his *voir dire* that he has formed an opinion that the defendant is guilty, but says he will be guided by the evidence in reaching a verdict, and it is not shown that his opinion implied malice or ill-will against the prisoner, he is not disqualified.

3. When, incident to a robbery, one of the robbers kills a third party after the goods have been taken out of the possession of the owner (or his agents), while the robbery is complete, so as to render the perpetrators liable to conviction for it, yet the killing being done in an attempt to conceal the crime, protect the robbers in the possession of the loot and facilitate their flight, is so closely connected with the robbery as to be a part of the *res gestæ* thereof, which may be an emanation of the act of robbery, and, although an act committed after the fact of robbery, it still constitutes part of the *res gestæ* of that act, and is murder committed in the perpetration of a robbery within the meaning of our statute, and, consequently, murder in the first degree.

4. Where in perpetrating a robbery one of the robbers kills a third party, the homicide is murder in the first degree, according to the statute; and if the judge charges the jury that even though the slayer is not engaged in robbery at the time, and willfully slays such other, he is guilty of murder in the first degree, provided he had time to premeditate and deliberate upon the act, it is an instruction entirely outside of the case, and a jury must be considered to have found a verdict according to the evidence and not outside of it.

5. If a judgment in a criminal case be reversed, the first trial will not be a bar to a retrial on the same indictment.

6. The trial of the issue presented by a plea of *autrefois acquit* or *autrefois convict* is, like that upon a plea of not guilty, triable by a jury only, and a request of the court for judgment upon the plea is properly denied.

7. Where one man kills another by a pistol shot, the killing is not one resulting from the use of an explosive, under the Crimes act, section 221a; that statute is intended to meet a case where death is the direct result of an explosion, not the indirect result of an explosion in the chamber of a pistol which propels a bullet.

---

On error to the Sussex County Oyer and Terminer.

For the plaintiff in error, *Egbert Rosecrans* and *William A. Dolan.*

For the defendant in error, *Theodore E. Dennis,* prosecutor of the pleas, *Lewis Van Blarcom, Michael Dunn* and *Sylvester C. Smith, Jr.*

The opinion of the court was delivered by

WALKER, CHANCELLOR. The defendant was convicted of murder in the first degree in the Sussex Oyer and Terminer and brings error directly into this court. The certificate of the trial judge is not technically correct. It omits the common law return of the record "with all things touching and concerning the same," but it is certified that "the entire record of the proceedings had upon the trial," under section 136 of the Criminal Procedure act, is returned, and we have considered the entire record upon its merits.

. The argument for the defendant is made under seven heads. The first is that the names of all jurors were not placed in the box together at the time the drawing commenced.

At the opening of the term forty-eight jurors were drawn. Later, the court ordered that twenty-four additional talesmen be drawn in the maner provided by law. This was done and the defendant was served with a copy of the indictment and the panel of forty-eight jurors, including the additional twenty-four. At the trial the forty-eight names were placed in the box and when they were exhausted without twelve traverse jurors being selected, the names of the twenty-four talesmen were put in and the drawing proceeded from that number until the jury was complete. This in nowise conflicted with any of the provisions of section 82 of the Criminal Procedure act. The specific objection is that the additional twenty-four names were not in the box at the time the drawing commenced. There is no statutory provision that they should be.

Counsel for defendant relies upon the cases of *State* v. *Lapp,* 84 *N. J. L.* 19, and *State* v. *Rombolo,* 89 *Id.* 565. In the Lapp case the error consisted in this: When all the names had been drawn out of the box the court ordered the sheriff to call in talesman, and a talesman so called took his seat. The sheriff then informed the court that the names of some of the regular panel had not been in the box at all during the drawing of the jury. The court ordered these names to be put in the box and the drawing to proceed. When the first name was drawn an exception was prayed

and allowed to the defendant. The talesman who had been called and had taken his seat was ordered off the jury, and a juror whose name was drawn out of the box was substituted over the objection of the defendant, who took exception upon the ground that his challenges had been exhausted; and it was held that the defendant's right is taken from him if, after he has exhausted his challenges, new names are for the first time put in and drawn out of the box. That is not this case. Here the special panel served was in the box and afterwards the talesman served were put in. It is sufficient if the panel from which the traverse jury may be chosen is put in the box in the first instance. The names of the talesmen should not be put in unless and until they are required by exhaustion of the regular panel without a traverse jury being obtained. In State *v.* Rombolo there were only thirty-six names of the special panel in the box, and this was held not a compliance with the statute. In the case at bar forty-eight names had been served but were exhausted, then the names of the talesmen, who had been served, were put into the box, and the balance of the jury was drawn from them. There is no statute requiring that the lawful panel of forty-eight and the talesmen shall be put into the box together. There was no error on this head.

The second point is that the challenge of the juror Frank Paddock was improperly denied. He answered on his *voir dire* that he had formed an opinion that the defendant was guilty, but said that he would be guided by the evidence in reaching a verdict. There was nothing to show that his opinion implied malice or ill-will against the prisoner. And in this state it has never been ground of challenge to a juror that he has formed an opinion concerning the prisoner's guilt so long as he declares his ability to consider the case on the evidence. *Wilson* v. *State,* 60 *N. J. L.* 171.

The third point is that the court erred in charging the jury that they must convict the defendant of murder in the first degree or acquit him. The fourth point is involved with this: It is, that the robbery was complete before the

time of the killing.  To a proper understanding of these
points—they are really one—a short resumé of the facts is
necessary.  They are: That on the night of June 13th, 1921,
the defendant, Turco, with ten others, came to Byram town-
ship, Sussex county, with the intention of holding up and
robbing a truck of the Sussex Print Works, and he, Turco,
and the other conspirators, went to a point on the highway
leading from Newton to Stanhope, and lay in wait until
Tuesday morning, June 14th.  The locality is known as the
"Cat Swamp" and is a lonely place.  A truck of the print
works, containing silk and copper rollers valued at upwards
of $9,000, left Newton and was proceeding to Passaic in
charge of a driver and his helper, when six armed and
masked men, including Turco, rushed from the underbrush,
about six-thirty A. M., and at the point of their pistols, com-
pelled the driver to stop.  They took him and the helper
from the truck and four of the men rushed them off the
road and up the steep bank of a hill and into the woods,
where they held them captive for several hours.  After the
two men had been removed from the truck the defendant,
Turco, and one of the conspirators, took charge of the truck
and drove it to an open space where they backed it off the
road with the intention of turning around.  While it was
stationery, Albert Koster, the deceased, appeared, coming
along the road riding a motorcycle on his way to work in
Stanhope.  Turco, the defendant, was at this time standing
on the ground near the truck.  He stepped out into the road
with a pistol in his hand and order Koster to stop.  He
applied his brakes and made every effort to stop, and as he
approached the defendant the motorcycle was moving slowly;
but when he reached a point in front of the truck Turco
fired his pistol at him.  The first shot was apparently not
fatal, and Turco then placed his left hand on Koster's
shoulder, and bringing his motorcycle to a complete stop,
fired at him twice, the last bullet passing through his heart
and killing him.  Immediately after the murder the other
man, under the directions of Turco, drove the truck away in
the direction of Easton.

The object and purpose of the conspiracy in this case was through robbery to seize the truck and run it to Easton, Pennsylvania, and distribute the silk in some portions among themselves. Clearly, the killing of Koster by Turco in the circumstances above detailed, was murder in the first degree according to our statute. 2 *Comp. Stat., p.* 1779, §§ 106, 107.

In 29 *Corp. Jur.* 1117, § 101, it is stated that where killing in the perpetration or attempt to perpetrate a felony, or one of certain enumerated felonies, is made murder in the first degree, the perpetration or attempt to perpetrate the felony is regarded as standing in the place of, or as the legal equivalent of, the willfulness, deliberation and premeditation necessary under the statute as to other killings, and dispenses with the necessity of proof thereof.

In *Whart. Hom.* (*3d. ed.*) 668, § 438, it is laid down that where several persons combine and conspire together for the common object to commit robbery, and in pursuit of that object one of them does an act which causes the death of a third person, each and all are principals, and each and all may be convicted of murder, usually in the first degree under the statute.

In *Conrad* v. *State,* 75 *Ohio St.* 52, it was held that where one starts to carry out the purpose to commit a robbery and kills another under circumstances so closely connected with the crime which he has undertaken as to be a part of the *res gestae* thereof, he is guilty of murder in the first degree within the meaning of the statute, whether the crime which he originally undertook has been technically completed or not. And (at *p.* 72) that "if the taking off life before reaching the building and also after breaking and entering the building, and before leaving it, is a taking of life in the perpetration or attempt to perpetrate burglary, at what point after the breaking and entering is the line of distinction to be drawn? At what point can it be drawn short of the absolute completion or abandonment of the whole enterprise? It seems logically there can be no such intermediate point, and we know of no case which holds otherwise." And again (at *p.* 73), that "when a person takes with force and violence the

goods of another from his person, or presence, and against his will, he has committed robbery; but it does not necessarily complete the crime. It constitutes robbery so far as to render the perpetrator liable to conviction for it; but the act of robbery itself may be prolonged beyond the time when that liability is fixed. When Brown and his co-defendants took the property by force they committed the crime of robbery so far as to render themselves liable to punishment for it; but the robbery is contemplation of law was not complete until the taking and carrying away was ended."

The killing of Koster by Turco was clearly part of the *res gestæ* of the robbery, which, in contemplation of law so far as the murder is concerned, was not completed. The purpose of Turco was clear. Koster had unintentionally come upon the robbers in his passage along the road to his work. Turco, the leader, undoubtedly believed that if Koster was allowed to pass and go on to the next town he would give the alarm, and he shot him in an attempt to conceal the crime for the time being and enable the robbers to make their escape unpursued.

Chief Justice Beasley, in *Hunter* v. *State,* 40 *N. J. L.* 495, treated the subject of *res gestæ,* and, quoting Wharton, said (at *p.* 538) that the *res gestæ* are those circumstances which are the undesigned incidents of a particular litigated act which are admissible when illustrative of such act; that these incidents may be separated from the act by a lapse of time more or less appreciable; that the distinguishing feature is that the acts should be necessary incidents of the litigated acts; necessary, in the sense that they are part of the immediate preparations for, or emanations of, such act.

That the conduct of the defendant after the fact may constitute part of the *res gestæ* is laid down by this court in *State* v. *Rombolo,* 91 *N. J. L.* 560.

The trial judge charged the jury that the effect of the statute which provides that if, in an attempt to commit robbery, one man, or any number of men, kill another, even though they did not start with that purpose in mind, but with the single purpose of robbery, their act, in such circumstances

under the law, is denominated murder. This was correct, and the facts of the case clearly brought the homicide within the statutory description. The judge, however, also charged the jury that even though Turco was not engaged in the robbery at the time, even if he were upon the highway for some lawful purpose, he had no right to take the life of a human being, and if he stood upon the highway, and, without just cause and provocation, willfully took the life of the unfortunate man going to his work early in the morning, under the circumstances portrayed in the case, he was guilty of murder in the first degree, provided he had time to think of the nature of the act he was doing, and had time to premeditate and deliberate, in the language of the statute. It is contended on behalf of the defendant that, the robbery being complete, the defendant cannot be convicted of murder in the first degree, because the elements of willfulness, premeditation and deliberation, necessary to such a crime, dissociated from robbery, were not indicated to the jury by the court. Assuming this to be a valid objection, and assuming that the question was properly raised, still we think that there is no reversible error in it, for section 136 of the Criminal Procedure act provides that no judgment given upon any indictment shall be reversed for any error except such as shall or may have prejudiced the defendant in maintaining his defense upon the merits. The instruction of the judge here objected to was entirely outside of the case. As already remarked, while still engaged in the robbery, Turco deliberately shot down and killed Koster, and this was murder committed in the perpetration of a robbery and nothing else; nor can it be distorted into anything else; therefore, when the judge charged that if Turco were not engaged in the robbery, but being upon the highway for some lawful purpose he shot and killed Koster, he charged that which was unsupported by any evidence upon which the jury could have rendered a verdict, and the jury must be considered to have found a verdict according to the evidence and not outside of it. In our opinion no theory of the case supports the view that the murder was committed as an independent act dissociated

from the robbery, and, consequently, the defendant can take nothing on account of this objection.

The fourth point is that there was error in the court's refusal of a trial and judgment for defendant upon his plea of *autrefois convict*. The defendant had had a previous trial upon which he was likewise convicted of murder in the first degree, upon which judgment was entered and defendant sentenced to death. That judgment was reversed and a *venire de novo* awarded. *State* v. *Turco,* 98 *N. J. L.* 61.

In *Smith and Bennett* v. *State,* 41 *N. J. L.* 598, it was held that if a judgment in a criminal case be reversed, in consequence of an error committed by the trial judge in charging the jury, the first trial will not be a bar to a retrial on the same indictment; and that the constitution of this state goes no further than to forbid the retrial of a person who has been acquitted. That is the opinion of this court, and is entirely dispositive of the question here raised. Chief Justice Beasley, in writing the opinion, said (at *p.* 616) that the expression of immunity in this particular class of cases in our constitution, namely, that "no person shall, after acquittal, be tried for the same offense," would seem to give rise to the implication of exclusion of immunity in all cases except acquittal; that a second trial is not interdicted when the first trial has proved abortive by reason of the mistake or misconduct of the judge or jury, or from accident, but only in the one case where the trial has resulted in an acquittal; and that the form of the entry of judgment that a *venire de novo* be issued is proper, as it truly indicates to the subordinate court the purpose and judgment of this court.

When the trial of this case was moved defendant, through his counsel, offered a plea of *autrefois convict,* and asked *judgment* thereon. This was not the proper practice. The trial of the issue presented by the plea of *autrefois acquit* (likewise *autrefois convict*) is, like that upon a plea of not guilty, triable by a jury only, under like procedure, except that the burden of proof of the issue lies upon the defendant;

and in the trial what becomes a matter of law for the court, and what a matter of fact for the jury to determine, must be regulated by the general practice relating to the admission of evidence, the effect of documents and records, and to instructions as to law to be applied by the jury to reach a conclusion. *State* v. *Ackerman,* 64 *N. J. L.* 99 (at *p.* 105.) The defendant not having requested a trial of the issue by a jury to be empaneled for that purpose (as was done in *State* v. *Mowser,* 92 *Id.* 474, 477), but requesting judgment upon the plea, to which no demurrer had been interposed by the state, the trial court refused to entertain the motion for judgment and properly denied it.

It is next contended on behalf of the defendant that he is exempt from punishment because the killing was the result of the use of an explosive. For this counsel relied upon the Crimes act (section 221a), which provides that whoever shall thereafter give information concerning others, or shall aid the authorities in the arrest and prosecution of parties implicated in any murder, injury or damage to person or property that may result from the use of dynamite or any other explosive by any person or persons with intent to kill or injure, shall be exempt from any prosecution or punishment, provided the person giving the information is not the only one taking part in the commission of the crime. The argument is that the killing in this case resulted from an explosion of powder in a pistol, and therefore comes within the provisions of the act.

It is perfectly apparent on the face of the statute that it is intended to meet a case where injury or death is the direct result of an explosion, not the indirect result of an explosion in the chamber of a gun or pistol which propels a bullet on its course to assassination; besides, the defendant is the only one who took part in the particular crime of committing murder; the others were guilty, if at all, because the murder was committed in the perpetration of a robbery in which all were engaged. Counsel in their brief assert that the defendant gave aid and information to the state in the prose-

cution of two of his co-defendants.  This will be assumed in deciding this attenuated point against him.

It is lastly contended on behalf of the defendant that the verdict was against the weight of the evidence.  Our examination has led us to the conclusion that, on the contrary, it was entirely in accord with the evidence.

The judgment under review must therefore be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TREN-CHARD, PARKER, KALISCH, BLACK, KATZENBACH, WHITE, HEPPENHEIMER, ACKERSON, VAN BUSKIRK, JJ.    11.

*For reversal*—None.