STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
CHARLES HOLLAND, DEFENDANT-APPELLANT.

Argued March 4 and 5, 1969—Decided December 3, 1971.

*Mr. Herman A. Adler* argued the cause for appellant.

*Mr. John F. Russo,* Assistant Prosecutor, argued the cause for respondent (*Mr. Robert A. Doherty,* Ocean County Prosecutor, attorney).

The opinion of the Court was delivered by

JACOBS, J. The defendant Holland was convicted of murder in the first degree and was sentenced to death. He appealed directly to this Court and, after oral argument, we withheld decision while awaiting recent Supreme Court determinations bearing on the death penalty. See *Mathis v. New Jersey,* 403 *U. S.* 946, 91 *S. Ct.* 2277, 29 *L. Ed.* 2d 855 (1971), *rehearing and motion for clarification denied,* 404 U. S. ——, 92 S. Ct. 31, 30 L. Ed. 2d 125 (1971); *Funicello v. New Jersey,* 403 *U. S.* 948, 91 S. Ct. 2278, 29 *L. Ed.* 2d 859 (1971), *rehearing and motion for clarification denied,* 404 U. S. ——, 92 S. Ct. 31, 30 L. Ed. 2d 125 (1971).

Ronald Sandlin, an attendant at a service station in Lakewood, was murdered in the course of a holdup. The defendant Holland and Reginald McKnight were jointly indicted for the robbery and murder. A severance was granted and McKnight was tried first. He had made a statement in which he told in detail about his participation with Holland in the robbery and murder. McKnight said that he first struck Sandlin with a tire iron and that later

Holland shot Sandlin with a gun which was in his possession but which belonged to McKnight. Sandlin's body was buried in a shallow grave which McKnight said he and Holland had dug with shovels obtained from the basement of McKnight's house. After a full trial during which McKnight's guilt was "established overwhelmingly" (*State v. McKnight*, 52 *N. J.* 35, 40 (1968)), the jury returned a verdict of guilty of murder in the first degree with a recommendation of life imprisonment. McKnight's conviction and life sentence were sustained by this Court in an opinion reported at 52 *N. J.* 35.

At Holland's trial, McKnight did not testify and his statement was of course inadmissible. Nonetheless the State's evidence clearly established that Holland, who was nineteen years of age, actively participated in the robbery and murder. Though much of it was circumstantial, it was strong and convincing and a fingerprint, located on the back of the cash register which was taken from the service station during the course of the robbery, was firmly identified by a fingerprint examiner of the Federal Bureau of Investigation as that of Holland. The jury in returning its verdict necessarily determined that Holland's guilt had been proved beyond reasonable doubt and, though his main brief sets forth seven points of alleged legal error, the defendant does not contend that the jury's verdict was against the weight of the evidence. Indeed if any such contention had been advanced here it would readily be rejected. See *R.* 2:10–1; *State v. Trantino*, 44 *N. J.* 358, 370 (1965), *cert. denied*, 382 *U. S.* 993, 86 S. Ct. 573, 15 *L. Ed. 2d* 479, *rehearing denied*, 383 *U. S.* 922, 86 S. Ct. 901, 15 *L. Ed. 2d* 679 (1966).

In the first and second points of his brief, the defendant complains about the denial of his motion for change of venue and about the prosecutor's references to the McKnight case during the *voir dire*. The motion for change of venue was grounded on the fact that the McKnight case had received such wide publicity in Ocean County as to render it unlikely that a suitable jury could be selected

to try Holland within that county. While there was much to be said in favor of a change of venue, we cannot find from the record before us that the denial of the motion was beyond the lower court's broad discretionary authority or that it amounted to prejudicial error calling for reversal of the defendant's conviction. See *State v. Ravenell,* 43 *N. J.* 171, 180–181 (1964), *cert. denied,* 379 *U. S.* 982, 85 S. Ct. 690, 13 *L. Ed.* 2d 572 (1965). Once it was determined that the trial was to be held in Ocean County, the efforts of all concerned were properly directed towards obtaining the fair and impartial jury to which the defendant was entitled and the prosecutor's references during the *voir dire* were undoubtedly designed towards that end. The prospective jurors were specifically interrogated as to their ability to decide the Holland case without regard to anything they might possibly have heard about the McKnight case and the trial judge gave explicit and appropriate instructions on the subject to those who were ultimately and carefully chosen to serve as jurors in the light of their stated impartiality and objectivity.

In his third point, the defendant contends that he "was denied a fair trial by the failure of the prosecution to introduce a portion of an alleged co-perpetrator's statement which could have been helpful to defendant's case.". During the trial the defendant asked the prosecutor to introduce that portion of McKnight's statement which asserted that he had hit Sandlin with the tire iron. The prosecutor refused to do so although he offered to introduce the entire statement. Some reliance is placed on the doctrine that a prosecutor may not suppress or withhold evidence favorable to the defendant (*Brady v. Maryland,* 373 *U. S.* 83, 83 S. Ct. 1194, 10 *L. Ed.* 2d 215 (1963); *Giles v. Maryland,* 386 *U. S.* 66, 87 S. Ct. 793, 17 *L. Ed.* 2d 737 (1967)) but that doctrine has no application here. The defendant was fully aware of McKnight's statement and there was no suppression or withholding of its contents. The prosecutor was not in any position to introduce McKnight's state-

ment or to vouch for its absolute truth in whole or in part. Nor was he under any obligation to introduce the selected portion which the defendant wanted the jury to consider but which the defendant himself did not seek to introduce under the authority of any established rule of evidence. *Cf.* Evidence Rule 63(10); *Report of New Jersey Supreme Court Committee on Evidence* 170 (1963).

■ In his fourth point, the defendant complains about the trial court's action in permitting the introduction into evidence of certain trousers, shovels and a pistol. The trousers were found in the grave with Sandlin's body. They were bloodstained and were undoubtedly connected with the crime. The shovels were discovered in the Manchester Township dump and were described by a witness as identical or similar to those that he saw Holland and McKnight carrying on the day following the murder. The pistol was found near the defendant's home. It was a .38 caliber revolver from which the cartridge case found in Sandlin's wallet in the grave had been fired. There was ample circumstantial testimony involving Holland, along with McKnight, in the commission of the murder and the evidential items referred to were clearly relevant. Their weight was of course a matter for the jury and their receipt into evidence was not erroneous or legally prejudicial. See *State v. Wade,* 89 *N. J. Super.* 139, 144–145 (*App. Div.* 1965); 1 *Wigmore, Evidence* § 29 (*3d ed.* 1940).

■ In his fifth point, the defendant contends that the trial court erred in denying his motion for acquittal at the close of the State's case. He expressly acknowledges that the State's case included, *inter alia,* proof that "a robbery had occurred at the gas station," that "two men answering the description of Holland and McKnight had been seen there shortly before Sandlin was discovered to be missing," that "Holland's fingerprint was later found on the missing cash register" and that "Sandlin was killed." Surely that was more than sufficient to withstand the motion for acquittal. See *State v. Ravenell, supra,* 43 *N. J.* at 184;

*State v. Fiorello,* 36 *N. J.* 80, 86–91 (1961), *cert. denied,* 368 *U. S.* 967, 82 S. Ct. 439, 7 *L. Ed. 2d* 396 (1962).

The defendant suggests that there was no evidence as to when the robbery itself terminated and that consequently it could not be determined that the ensuing killing was a "felony murder" under *N. J. S. A.* 2A:113–2. But clearly a killing which occurred, as could readily be found here, some time within the course of the robbery including its aftermaths of escape and concealment efforts, constitutes a felony murder within the statutory contemplation. See *State v. Turco,* 99 *N. J. L.* 96, 102 (*E. & A.* 1923). In *State v. Gimbel,* 107 *N. J. L.* 235 (*E. & A.* 1930), the court, in rejecting a contention that a killing during escape efforts after termination of the robbery itself was not a felony murder, summarized the holding in *Turco* as follows:

> In the Turco case we held that when, incident to a robbery, one of the robbers kills a third party after the goods have been taken out of the possession of the owner (or his agents), while the robbery is complete, so as to render the perpetrators liable to conviction for it, yet the killing being done in an attempt to conceal the crime, protect the robbers in the possession of the loot and facilitate their flight, is so closely connected with the robbery as to be a part of the *res gestae* thereof, which may be an emanation of the act of robbery, and, although an act committed after the fact of robbery it still constitutes part of the *res gestae* of that act, and is murder committed in the perpetration of a robbery within the meaning of our statute, and, consequently, murder in the first degree. 107 *N. J. L.* at 240–241.

■ In his sixth point, the defendant contends that the prosecutor's comments during summation constituted a violation of his "right to remain silent." The defendant did not take the witness stand and the trial court charged the jury, on the defendant's request, that that was his privilege and that no inference was to be drawn from his failure to testify. Defense counsel in his summation attacked the circumstantial nature of the State's case and urged that there was an absence of direct evidence linking the defendant to the actual killing. In response, the prosecutor in his summation stressed the various inferences which

could reasonably be drawn from the testimonial items in the State's case. See *State v. Laws,* 50 *N. J.* 159, 186 (1967), *s. c.* 51 *N. J.* 494, *cert. denied,* 393 *U. S.* 971, 89 S. Ct. 408, 21 *L. Ed. 2d* 384 (1968). The prosecutor did not at any time mention the defendant's failure to testify although he did point out that there was no evidence supporting various conjectures by defense counsel. This clearly did not exceed the leeway which the law affords. *Cf. United States v. Heithaus,* 377 *F. 2d* 484, 486 (3 Cir. 1967); *State v. Angeleri,* 51 *N. J.* 382, 386, *cert. denied,* 393 *U. S.* 951, 89 S. Ct. 372, 21 *L. Ed. 2d* 362 (1968). All in all, we find that the prosecutor's summation, to which the defendant voiced no objection at the trial (see *State v. Hill,* 47 *N. J.* 490, 499 (1966)), may not fairly or realistically be viewed as having violated the defendant's right to remain silent or as having contravened the principles enunciated in *Griffin v. State of Cailofrnia,* 380 *U. S.* 609, 85 S. Ct. 1229, 14 *L. Ed. 2d* 106, *rehearing denied,* 381 *U. S.* 957, 85 S. Ct. 1797, 14 *L. Ed. 2d* 730 (1965).

In his seventh point, the defendant urges that his conviction should be set aside "because the jury violated the court's supplemental instruction in reaching its decision as to the penalty to be imposed." After the case was submitted to the jury at 3:45 P.M., it deliberated until 7:45 P.M. when it returned and asked several questions including: "Does life imprisonment mean the rest of his natural life or is he eligible for parole?" In response, the trial court properly gave the instruction set forth in *State v. White,* 27 *N. J.* 158, 179 (1958). The jury then retired and twenty minutes later returned with its verdict of guilty of murder in the first degree. The defendant contends that this sequence of events indicates that the jury did not conscientiously consider and act upon the trial court's instruction. We do not agree. The members of the jury had undoubtedly given extensive consideration to both guilt and punishment before they submitted their inquiry and the fact that they required only twenty minutes more after receiving the instruction in

nowise suggests that they defaulted in their sworn responsibilities. *In re Stern,* 11 *N. J.* 584 (1953), which is relied upon by the defendant is not at all in point (see 11 *N. J.* at 589–590) and no case has been found which lends support to the defendant's notion that the limited nature of the elapsed time between the supplemental instruction and the verdict in and of itself established the invalidity of the latter. See Annot., "Effect on verdict in criminal case of haste or shortness of time in which jury reached it," 91 *A. L. R. 2d* 1238, 39–40 (1963).

■ After the defendant's main brief was filed, the Supreme Court handed down its decision in *Witherspoon v. Illinois,* 391 *U. S.* 510, 88 S. Ct. 1770, 20 *L. Ed. 2d* 776, *rehearing denied,* 393 *U. S.* 898, 89 S. Ct. 67, 21 *L. Ed. 2d* 186 (1968), and after the defendant's oral argument was completed before us the Supreme Court decided *Boulden v. Holman,* 394 *U. S.* 478, 89 S. Ct. 1138, 22 *L. Ed. 2d* 433 (1969). In *Witherspoon* it set aside a death sentence which had been fixed by a jury selected in accordance with a state statute providing that in murder trials it shall be cause for challenge that the juror "has conscientious scruples against capital punishment, or that he is opposed to the same." 391 *U. S.* at 512, 88 S. Ct. at 1772, 20 *L. Ed. 2d* at 779. In his opinion, Justice Stewart acknowledged that veniremen may properly be excluded for cause where they make it unmistakably clear "that they would *automalically* vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial of the case" (391 *U. S.* at 522, 88 S. Ct. at 1777, 20 *L. Ed. 2d* at 785, n. 21); but he firmly held for the Court that "a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction." 391 *U. S.* at 522, 88 S. Ct. at 1777, 20 *L. Ed. 2d* at 784–785. Such a jury was deemed by the Court to be constitutionally deficient as partial and unrepre-

sentative on the issue of punishment as distinguished from guilt. 391 *U. S.* at 516–523, 88 S. Ct. 1770, 20 *L. Ed. 2d* at 782–786. See *Bumper v. North Carolina,* 391 *U. S.* 543, 88 S. Ct. 1788, 20 *L. Ed. 2d* 797 (1968).

In *Boulden,* the defendant was convicted of murder and was sentenced to death in accordance with the jury's verdict. Later in a habeas corpus proceeding he raised the *Witherspoon* issue. The state statute provided that in capital cases it shall be good cause for challenge by the state that the venireman has "a fixed opinion" against the death penalty. The limited record indicated that eleven veniremen were excused for cause simply on the basis of their affirmative answer to the question of whether they had a fixed opinion against capital punishment. The Court expressed the view that the sentence of death could not constitutionally stand under *Witherspoon,* although it did not finally decide the question preferring to remand it for a more complete record. In the course of his opinion, Justice Stewart reaffirmed *Witherspoon* and noted that that case made it clear that "unless a venireman states unambiguously that he would automatically vote against the imposition of capital punishment no matter what the trial might reveal, it simply cannot be assumed that that is his position." And referring to the veniremen who were excluded from the jury in *Boulden* because of their statements that they did not believe in capital punishment, he made this comment: "Yet it is entirely possible that a person who has 'a fixed opinion against' or who does not 'believe in' capital punishment might nevertheless be perfectly able as a juror to abide by existing law — to follow conscientiously the instructions of a trial judge and to consider fairly the imposition of the death sentence in a particular case." 394 *U. S.* at 483–484, 89 S. Ct. at 1141–1142, 22 *L. Ed. 2d* at 438–439. See *Maxwell v. Bishop,* 398 *U. S.* 262, 90 S. Ct. 1578, 26 *L. Ed. 2d* 221 (1970).

With leave of this Court, the defendant Holland filed a supplemental brief which set forth a *Witherspoon* attack on

the selection of the jury which determined that he shall die. In it he asserted that thirty-four prospective jurors, representing about twenty-five per cent of all called, were excused because of their views about capital punishment; that only five of them stated flatly that they would not impose the death penalty under any circumstances; and that of the remainder all but six simply indicated, in general terms, that they had religious or moral scruples against capital punishment or that they would not want to serve on a jury which might return the death penalty. The six indicated that they could return a death penalty but not against one who, while participating in a felony murder, did not do the actual killing. *Cf. Witherspoon, supra,* 391 *U. S.* at 522, 88 S. Ct. 1770, 20 *L. Ed. 2d* at 785, n. 21. In response to the defendant's supplemental brief, the prosecutor advised this Court by letter that he did not intend to file any further brief since the State's position was "that the facts and law are correctly stated in the appellant's brief." However, at oral argument, the State's position was somewhat altered with the prosecutor apparently seeking to defend the manner in which the Holland jury was selected as proper within *State v. Mathis,* 52 *N. J.* 238 (1968).

On June 28, 1971 the judgment in *Mathis,* insofar as it imposed the death sentence, was reversed by the Supreme Court and the case was remanded for further proceedings. *Mathis v. New Jersey, supra,* 403 *U. S.* 946, 91 S. Ct. 2277, 29 *L. Ed. 2d* 855. Thereafter we called upon counsel to file additional briefs and in response we received letters from both the defendant's counsel and the Ocean County Prosecutor. The prosecutor's letter dated November 1, 1971 advised that the State's position is "that the interests of justice would be best served if the penalty be reduced to life imprisonment"; in an earlier letter dated March 21, 1969, the prosecutor had expressed the view that "capital punishment may be a thing of the past in this State." (*cf. Funicello, supra,* 403 *U. S.* 948, 91 S. Ct. 2278, 29 *L. Ed. 2d* 859) and had taken the position "that the interest of justice would

be better served if the penalty were reduced to life imprisonment rather than having the matter retried in full." The letter from defendant's counsel dated November 2, 1971 requested "that the Court give consideration to reducing the sentence of defendant Holland from death to life imprisonment"; in an earlier letter dated March 6, 1969 the defendant's counsel had advised that "the defendant would be agreeable to waiving any possible other appellate relief if his present death sentence could be modified to life imprisonment."

Our examination of the record leaves no room for doubt that there was error in that the *Witherspoon* doctrine (391 *U. S.* 510, 88 S. Ct. 1770, 20 *L. Ed. 2d* 776) was not applied in the selection of the jury. But this error related solely to penalty and did not relate to guilt which, as we have found, was lawfully established. We are satisfied that under the circumstances, including the prosecutor's waiver, the death penalty should now be reduced to life imprisonment. This Court's authority to take such action has been firmly established in earlier decisions and further discussion of the issue here would be pointless. See *State v. Laws, supra,* 51 *N. J.* 494 (1968); *State v. Royster,* 57 *N. J.* 472 (1971); *State v. Conyers,* 58 *N. J.* 123 (1971). As the State has asserted, the reduction of the death penalty to life imprisonment will well serve the interests of justice without the heavy burdens of retrial; it will not be unjust to the defendant for he had a fair trial which was free from any prejudicial error relating to guilt; and it may fairly be viewed as properly serving and protecting the interests of society since it will confine the defendant for his full natural life, unless paroled earlier by lawfully constituted authority as a fit subject for parole. See *State v. White, supra,* 27 *N. J.* at 177. Accordingly the judgment below is modified to the end that the defendant stands convicted of murder in the first degree with sentence of life imprisonment.

Modified.

FRANCIS, J. (dissenting). This defendant perpetrated a cold and brutal killing, which a jury after full trial said constituted first degree murder. The Legislature in unequivocally mandatory terms has ordained that the punishment for such a murder shall be death *"unless"* the jury after a comparison and consideration of all the evidence decides that the punishment shall be life imprisonment. *N. J. S. A.* 2A:113–4. Here, the jury to whom the issue of penalty was committed, 12 conscientious citizens of Ocean County, found no ameliorating circumstances in the evidence, nothing to detract from the sheer callousness of defendant's murder of the 18 year old victim, and so fixed the penalty at death. It was not an easy task for them, and obviously they felt a death sentence was the only way in which their full public duty could be satisfied. Now this Court without referring to a single palliating circumstance in the evidence, or making a finding that the sentence is contrary to the weight of the evidence, and in disregard of the clearly expressed legislative will, has cancelled the punishment deemed just by the jury. Thus all the travail of the jury is reduced to an exercise in futility.

As I said in my dissents in *State v. Laws*, 51 *N. J.* 494, 518, *cert. den.* 393 *U. S.* 971, 89 S. Ct. 408, 21 *L. Ed.* 2d 384 (1968); *State v. Royster*, 57 *N. J.* 472, 492 (1971), and *State v. Conyers*, 58 *N. J.* 123, 149 (1971), and I repeat it here, there is no authority in this Court under the circumstances present to substitute a life imprisonment sentence for the punishment of death decreed by the jury. The Legislature vested that decision in the discretion of the jury, and there is not the slightest suggestion anywhere in the majority opinion that the jurors abused their discretion.

As this Court said in *State v. Forcella*, 52 *N. J.* 263, 283 (1968), *cert. dismissed* 397 *U. S.* 959, 90 S. Ct. 999, 25 *L. Ed.* 2d 252 (1970):

Capital punishment lies within the authority and the responsibility of the Legislature, and the Legislature has expressly and continuously dealt with the subject. There have been numerous efforts to abolish it.

As recently as 1964 a study commission created by joint resolution of the Legislature recommended that the death penalty be retained. * * * It is not our responsibility, or authority, whatever our individual views on capital punishment, to impute to the Legislature a repeal it has consistently refused to enact during more than a century of agitation upon this subject.

Furthermore, I do not see even a shadow of an intention on the part of the Legislature to grant or to recognize authority in our Court to disregard its mandate that the punishment for first degree murder "shall be death" unless the jury decrees otherwise. If the mandate is to be changed the Legislature should do it.

I would reverse the sentence in this case and order a new trial as to punishment alone.

*For modification*—Chief Justice WEINTRAUB and Justices JACOBS, PROCTOR, HALL and SCHETTINO—5.

*For reversal*—Justice FRANCIS—1.