129 N.J. Super. 336 (1974)
323 A.2d 541
THE STATE OF NEW JERSEY, PLAINTIFF,
v.
JOSEPH SUIT, DEFENDANT.
Superior Court of New Jersey, Law Division  (Criminal).
Decided July 3, 1974.
*338 Mr. Russell Cottrell, Assistant Prosecutor, for plaintiff (Mr. James M. Coleman, Jr., Prosecutor of Monmouth County, attorney).
Mr. Thomas J. Spinello, Assistant Deputy Public Defender, for the defendant (Mr. Stanley C. Van Ness, Public Defender, attorney).
McGOWAN, A.J.S.C.
Defendant moves before trial for dismissal of count I of Indictment No. 790-73 charging him with the felony murder of one Charles Williams on February 10, 1974. It is defendant's position that as a matter of law he cannot be charged with the murder of Williams, whose death occurred as a result of a wound inflicted by another, one Solomon Richardson, one of the intended victims. Williams and Suit were engaged in the commission of an armed robbery upon Richardson, among others, when Richardson shot and fatally wounded Williams and injured defendant Suit. The State argues that under N.J.S.A. 2A:113-1, which the State submits adopts the total common law felony-murder doctrine, Suit is liable for murder, since Williams' demise occurred during the commission of one of the crimes outlined by the statute. For purposes of deciding this motion, defendant and the State have stipulated to the following facts:
On Sunday, February 10, 1974, at about 5:30 P.M. defendant Joseph Suit together with Charles Williams entered *339 an apartment located at 1215 Lake Avenue in the City of Asbury Park, New Jersey. Present in the apartment were the tenant, Lew Marsh, and three visitors-Estelle Coleman, Clarence Vaugh and Solomon Richardson. After a period of conversation Williams pulled out a 22-cal. pistol, pointed it at Richardson and the others, and then robbed them. During the course of the armed robbery Suit was located near the inside of the door of the apartment. While Williams was placing a bullet into his own gun, Richardson produced his own gun, a 38-cal. pistol which had been hidden on his person. Richardson shot and killed Williams and then shot and wounded Suit. Coleman, Richardson and Vaugh were later found with two guns, namely, the pistol used by Williams and the gun used by Richardson. For purposes of this motion it is stipulated that defendant Suit acted as an accomplice to the armed robbery, perpetrated by Williams. The State will rely exclusively upon the felony-murder doctrine in its prosecution of defendant Suit.
The issue squarely before this court is whether under N.J.S.A. 2A:113-1 a surviving participant in an armed robbery can be held liable for murder where his coparticipant was killed as a result of a shot fired by the intended victim in an apparent attempt to abort the robbery.
Since dismissal is a severe remedy, it is defendant's burden to offer this court "the clearest and plainest" of grounds to justify such action. State v. Welek, 10 N.J. 355 (1952). Counsel for defendant and for the State agree there is no controlling New Jersey authority on point with the particular fact pattern at bar. Thus, an examination of our statute in light of its interpretation by New Jersey courts, and an examination of the statutes and case law of our surrounding jurisdictions, is essential to a determination of this matter.
N.J.S.A. 2A:113-1 provides in pertinent part:
If any person, in committing or attempting to commit * * * robbery * * * kills another, or if the death of anyone ensues from the *340 committing or attempting to commit such crime or act; * * * then such person so killing is guilty of murder.
The degree of murder is set forth in N.J.S.A. 2A:113-2 as follows:
Murder * * * which is committed in perpetrating or attempting to perpetrate ... robbery * * * is murder in the first degree.
The prosecutor argues that under the above-cited statutes any death which occurs during the commission of a felony is imputable to the perpetrator as murder. The State relies on State v. Kress, 105 N.J. Super. 514 (Law Div. 1969), and points to that part of the opinion which discusses and interprets the murder statute. The factual pattern in Kress is different and distinguishable. Kress was a bail hearing where the court considered the propriety of a murder indictment against a defendant who, in effect, used a bank official as a shield in attempting to escape from a bank after committing an armed robbery. The police, while apprehending the perpetrators, fatally wounded the official. Defendant there argued that he could not be held liable for murder since the police fired the fatal shots. This argument was based on an interpretation of N.J.S.A. 2A:113-1 which held that the phrase "then such person so killing" required that liability must be predicated on the person who in fact fired the fatal shot. Although a portion of the statute speaks in terms of "if the death of anyone ensues from the committing" (hereinafter referred to as the ensues clause), defendant argued that that provision is incomplete and of no effect lest it be coupled with the concluding phrase placing liability on the person acting. The Kress court rejected this argument and found that the ensues clause could stand alone, without regard to the closing provision, otherwise the phrase would be mere surplusage. However, the Kress court also noted that the facts involved indicated defendant used decedent as a shield, thus forcing decedent into a position likely to cause his death. Kress, supra, 105 N.J. Super. *341 at 521-522. The State submits that Kress is illustrative of the wide sweep of New Jersey's murder statute.
Defendant counters and argues that the interpretation of the murder statute in Kress ignores the mandate of State v. Provenzano, 34 N.J. 318, 322 (1961), which requires a common sense interpretation of a criminal statute. It is submitted that the ensues clause without the concluding phrase is incomplete and incomprehensible. Moreover, defendant submits that there is no authority in case law for the position adopted in the Kress decision. See, also, the excellent case note critically analyzing the Kress decision, 24 Rutgers L. Rev. 591 (1970).
A review of some New Jersey cases is appropriate if we are to gain any insight into the felony-murder doctrine in general. At the outset it should be noted that there is no dispute at present as to whether Suit's liability is lessened since he was an accomplice. All participants in a felony are liable as if they were principals. See N.J.S.A. 2A:85-14.
Some cases which discuss felony-murder are concerned with the concept of res gestae and consider questions of whether the felony was abandoned or completed prior to the commission of the homicide. In State v. Mule, 114 N.J.L. 384 (E. & A. 1935), defendants were convicted of first degree murder. While the case centers about the question of whether one of the participants had withdrawn from the felony, Mule is noteworthy here since that court discusses the effect that the conduct of the victim might have on the elements of the crime. During a robbery attempt the victim assaulted one of the robbers and was lunging for defendant when it appeared to both felons that the victim was about to resort to a weapon. One of the felons fired a shot, allegedly to scare the victim but which subsequently killed him. The court found that this act was committed in an attempt to perpetrate the robbery and held that the victim's conduct was of no consequence in assessing defendant's liability:
*342 That the resistance offered by the intended victim, whether unexpected or otherwise, prompted Scarponi to use the gun for self-protection, is therefore of no moment. It matters not that he fired the shot to escape violence at the hands of the resisting victim, and not to aid in the consummation of the planned robbery, or because of fright, as he suggested.
In such circumstances, the shooting was woven into the fabric of the planned crime, and was inseparable from it. [114 N.J.L. at 391-392]
This res gestae approach actually developed in response to defense arguments that the felony was complete prior to the infliction of the fatal blow. See State v. Artis, 57 N.J. 24, 32 (1970); State v. Turco, 99 N.J.L. 96 (E. & A. 1923); State v. Gimbel, 107 N.J.L. 235 (E. & A. 1930).
In State v. Carlino, 98 N.J.L. 48 (Sup. Ct.), aff'd 99 N.J.L. 292 (E. & A. 1923), the question was whether an accomplice who had fled the scene had sufficiently removed himself from the crime to escape liability for a shot fired by one of his accomplices. The court held (at 52) that all participants in an unlawful act are liable as principals for the particular crime; all are liable for murder if but "one of them * * * kill a man," State v. Lucas, 30 N.J. 37 (1959); State v. Butler, 27 N.J. 560 (1950); State v. Hubbard, 123 N.J. Super. 345 (App. Div. 1973); Ruvesel v. State, 62 N.J.L. 216 (E. & A. 1898). Also, in State v. James, 96 N.J.L. 132 (E. & A. 1921), that court, in considering insanity as a defense to a felony murder, stated that a homicide committed in the perpetration of a robbery, if murder at all, is murder in the first degree. (Emphasis supplied). This case is noteworthy in that it is the sole case in New Jersey which indicates that murder may not lie for a homicide committed during a felony.
The prosecutor here argues that it can be nothing but first-degree murder because of the breadth of the language of N.J.S.A. 2A:113-1, as evidenced by the holding in State v. McKeiver, 89 N.J. Super. 52 (Law Div. 1965). In that case defendant, charged with felony-murder, moved to dismiss on grounds that since decedent, a bystander and *343 possible victim, had suffered cardiac arrest during the robbery, the death could not be attributable to the felony. The court held (at 57) that "the fact that there was no physical contact with decedent does not negate the premise that a homicide occurred as a result of fear and apprehension during defendant's commission of a robbery." It was the court's opinion that the death was a direct result of defendant's actions. This case, of course, presents a fact pattern different from the case at bar.
Our Supreme Court, in State v. Bunk, 4 N.J. 461 (1950), cert. den. 340 U.S. 839, 71 S.Ct. 25, 95 L.Ed. 615 (1950), expressly declined to rule if first-degree murder would lie where decedent was killed by a third person not acting in concert or having any connection with defendants. The issue arose on appeal as a claim of error in the trial court's charge. Judge Francis (later Justice Francis) instructed the jury as follows:
During the drawing of this jury, and while some of you were in the box and while some others of you were in the courtroom a legal argument between counsel and the Court took place. At that time I expressed the view that if during the course of this attempted robbery a third person, such as a patron of the tavern, drew a gun or used a gun to aid in repulsing the robbers and in doing so accidentally killed another person, the persons attempting the robbery would be guilty of murder in the first degree for that killing.
Since that time my further study of this statute and of the law has convinced me that the view I then expressed was an erroneous view. Consequently, in order to avoid any possible misunderstanding on the subject, I expressly withdraw that assertion and instruct those of you who heard it to disregard it.
If the killing of Peter Newcomb came about through the firing of a shot by a third person in resisting the attempt at robbery and that third person had no connection with these defendants, then under the statute they are not guilty under the indictment and must be acquitted. [4 N.J. at 468]
Our Supreme Court merely held that the charge was not ground for reversal. It should be noted that the theory of this charge is adopted by Schlosser in his Treatise on New Jersey Criminal Law. He comments that while the point *344 has not been decided, it is doubtful the felons could be held liable for a killing of another by a third person attempting to repulse the robbers. See 2 Schlosser, Criminal Laws of N.J. (3 ed. 1970), § 57:16 at 94. Both Bunk and Schlosser speak in terms of the death of another person, thus not clearly indicating applicability to the death of a co-felon.
It appears that this court must examine both the purpose of the doctrine and the instant fact pattern to decide this issue. At the outset it should be noted that at common law any homicide which resulted from the perpetration or attempted perpetration of an inherently dangerous felony was murder. Perkins, Criminal Law (2 ed. 1969) 41. The doctrine arose and is premised upon a theory of transferred intent, that is, that one perpetrating or attempting to perpetrate an inherently dangerous felony possesses a malevolent state of mind which the law calls malice.[1] However, the felony-murder doctrine is not actually concerned with the "intent to kill" or "malice aforethought" which is normally an element to be proven in a first-degree murder prosecution. Rather, the phrase employed to define intent here is "man-endangering state of mind." See generally, Perkins, op. cit., at 46 et seq.
It is this intent which transfers into that element of malice necessary to sustain a charge of first-degree murder and is imputed to the person who kills during the felony. Thus, when killing occurs in the commission of a robbery, it is murder in the first degree, even though death was not intended. Therefore, in such a case, the State is not under any duty to prove a willful, deliberate and premeditated killing. State v. Holland, 59 N.J. 451, 458 (1971); State v. Turco, supra, 99 N.J.L. at 102.
*345 From the New Jersey cases it appears there is no real question as to liability when the perpetrator uses the victim as a shield, Kress, supra; or when the perpetrator himself fires the shot or fatally injures a third party, Turco, supra, Gimbel, supra and Mule, supra. A real question is presented, however, in situations such as the one at bar where the fatal shot was fired by the intended victim in an effort to defend against the robbery being perpetrated upon him or intended to be perpetrated upon him, resulting in the death of a co-perpetrator. The difficulties presented in such situations require the courts to examine the factual pattern of each case in light of the particular statutory authority.
Unquestionably robbers are the factual cause of any shooting which is intended to frustrate the robbery or arrest the offenders, but whether a factual cause is to be recognized as the proximate cause of resulting harm requires a policy-decision in a situation such as this. Many possibilities are involved when death has been caused by those defending against robbery, of which the following may be mentioned with no attempt to be exhaustive: (1) The robbers may not have been armed; (2) they may have been armed but without having displayed a weapon; (3) one robber may have actually or apparently reached for a weapon; (4) he may have displayed a weapon without pointing it; (5) he may have pointed an unloaded weapon, and so forth. [Perkins, op. cit. at 721]
Thus, it is the person who acts and his reasons for so acting which must be scrutinized. If the action is that of the robber, clearly he is the cause of the resulting death. If the action be that of the victim, and he be "such person so killing", his actions are absolutely justifiable. How, then, is it possible to transfer malicious intent when none is present where a justifiable homicide occurs?
Therefore, many courts have adopted the position that without clear proximate causation, traceable through the actions of the felon, liability will not be found. See Morris, "The Felon's Responsibility for Lethal Acts of Others," 105 U. of Pa. L. Rev., 50, 51 (1956). In these jurisdictions the act must be one directly attributable to the felon or his accomplice, and in furtherance of the common plan to *346 commit the felony. The New York Court of Appeals, in People v. Wood, 8 N.Y.2d 48, 201 N.Y.S.2d 328, 167 N.E.2d 736 (1960), stated that:
* * * in order for a felon to be guilty of the homicide, the act (as in agency) must be "either actually or constructively his, and it cannot be his act in either sense unless committed by his own hand or by some one acting in concert with him or in furtherance of a common object or purpose." (Commonwealth v. Campbell, 89 Mass. 541, 544 [rioter not guilty of a murder for accidental killing of an innocent person by those suppressing the riot]; Butler v. People, 125 Ill. 641, 18 N.E. 338, 1 L.R.A. 211 [felon not guilty although rowdy conduct resulted in accidental killing of bystander by town marshal]; People v. Garippo, 292 Ill. 293, 127 N.E. 75 [felon not guilty where unknown person killed his accomplice during course of a robbery]; Commonwealth v. Moore, 121 Ky. 97, 88 S.W. 1085, 2 L.R.A., N.S. 719 [felon not guilty where victim of robbery accidentally killed a bystander]; State v. Oxendine, 187 N.C. 658, 122 S.C. 568 [felon not guilty where victim of assault killed by a bystander]). [201 N.Y.S.2d at 332, 167 N.E.2d at 739]
It should also be noted that the Wood court concluded that in light of the common law, case law and a fair reading of the murder statute, the legislature intended felony-murder to be confined to homicides committed only by felons.[2]
This position was also adopted in Pennsylvania, as evidenced by Commonwealth v. Redline, 391 Pa. 486, 137 A.2d 472 (Sup. Ct. 1958). Previously, the law in Pennsylvania was contained in Commonwealth v. Thomas, 382 Pa. 639, *347 117 A.2d 204 (Sup. Ct. 1955), which held defendant liable for the death of his accomplice who was shot by the victim/owner of a grocery store while attempting to flee after an armed robbery. The Redline court held Thomas to be an unwarranted extension of the felony-murder doctrine and held that a justifiable homicide could not be used to support a charge of murder.[3] It was the reasoning in Redline that a criminal charge could not be lodged against someone for the consequences of lawful conduct of another. For a full discussion of the cases in this area, see Annotation, "Criminal liability, where act of killing is done by one resisting felony or other unlawful act committed by defendant," 56 A.L.R.3d 239 (1974). See also, People v. Austin, 370 Mich. 12, 120 N.W.2d 766 (Sup. Ct. 1963); People v. Hudson, 6 Ill. App.3d 1062, 287 N.E.2d 41 (App. Ct. 1972), which adopt the position advanced in Redline, supra.
The California courts have also held that for a defendant to be convicted under the felony-murder rule, it is necessary that the felon or his accomplice commit the killing.[4] If *348 the facts are not so, then the killing cannot be said to be committed to perpetrate the felony  rather, it is done in an attempt to frustrate same. People v. Washington, 62 Cal.2d 777, 44 Cal. Rptr. 442, 402 P.2d 130 (Sup. Ct. 1965).[5] Also, in Commonwealth v. Balliro, 349 Mass. 505, 209 N.E. 2d 308, 14 A.L.R.3d 640 (Sup.-Jud. Ct. 1965), the court reiterated the century-old Massachusetts rule that no person could be guilty of a homicide unless the act of homicide be actually or constructively his.
Similarly, the proposed New Jersey Penal Code embraces the standards of liability for felony-murder as outlined by the case law and statutory authority in New York, Pennsylvania and California. 1 New Jersey Penal Code, "Report & Penal Code," Final Report of the New Jersey Criminal Law Revision Commission (Oct. 1971). In fact, the felony-murder provision of the proposed Code is substantially the same as that outlined in the New York Penal Code, § 125.25. (See footnote 2, supra). Under the proposed Code, §§ 2C: 11-2 et seq., liability would be imputed to a participant only for the death of a person other than one of the co-participants in the robbery.[6]
*349 The State argues that the above-cited cases are inapplicable because of statutory differences. It is argued that the New Jersey statute is an expansion of the common law, in the sense that it speaks in terms of "any death which occurs without regard to the person whose action causes same." I cannot agree with this statutory interpretation.
N.J.S.A. 2A:113-1 cannot be bifurcated into incomprehensible segments. If the ensues clause is severed and held to stand alone, it is not only a sentence fragment, but also imposes no liability because it is without conclusion. A penal statute without a penalty clause is of no force and effect. State v. Fair Lawn Service Center, Inc., 20 N.J. 468, 473 (1956). Nor can I find any authority for the conclusion in Kress that the semicolon is dispositive on the question of legislative intent. Rather, it appears that where "the dominant statutory purpose is clear, the court may disregard punctuation or even repunctuate in search for legislative intention." In re Marvin, 97 N.J. Super. 62, 73 (App. Div. 1967). See, again, Comment, 24 Rutgers L. Rev. 591 (Spring 1970). We must bear in mind that we are construing a penal statute and cannot "create a liability when the words of the enactment are not clear in fixing it * * *." State v. Mundet Cork Corp., 8 N.J. 359, 365 *350 (1952) cert. den. 344 U.S. 819, 73 S.Ct. 14, 97 L.Ed. 637 (1952). The ultimate question in this situation is whether in fact this defendant is guilty of this crime. State v. Giardina, 27 N.J. 313, 316 (1958). Of course, this does not mean that a ridiculous result shall be reached because some ingenious path may be found to that end. Rather, it means that a statute shall not be extended by tenuous interpretation beyond the fair meaning of its terms, lest it be applied to persons or conduct beyond the contemplation of the legislature. State v. Carbone, 38 N.J. 19, 24 (1962); State v. Provenzano, supra, 34 N.J. at 322.
It is this court's opinion that defendant herein is beyond the contemplation and proscription of N.J.S.A. 2A:113-1. The act resulting in Williams' death cannot be directly attributable to defendant in furtherance of the common plan to commit robbery. Nor can defendant be said to be the "person so killing" under the statutory language. Suit was not the person who killed. Rather it was Richardson, the intended victim, whose voluntary responsive actions resulted in what may be termed a justifiable homicide.
As a matter of law, I find on these facts that defendant cannot be held to answer a charge of felony-murder under N.J.S.A. 2A:113-1. Therefore, count I of Indictment 790-73 is dismissed. Motion granted.
NOTES
[1] It should be noted, however, that at this point in time most felonies were capital offenses. Thus, there was no increase in penalty by virtue of a felony-murder prosecution.
[2] This conclusion was adopted by the New York Legislature, as evidenced by New York Penal Code, § 125.25, McKinney's Consol. Laws, c. 40, which provides in pertinent part that: "* * * A person is guilty of murder when * * * (3) Acting either alone or with one or more other persons, he commits or attempts to commit robbery * * * and, in the course of and in furtherance of such crime or of immediate flight therefrom, he, or another participant, if there be any, causes the death of a person other than one of the participants; except that in any prosecution under this subdivision, in which the defendant was not the only participant in the underlying crime, it is an affirmative defense that the defendant: (a) Did not commit the homicidal act or in any way solicit, request, command, importune, cause or aid the commission thereof; and (b) Was not armed with a deadly weapon * * *" (Emphasis supplied)
[3] The controlling murder statutes in Pennsylvania are as follows:

18 Purdon, cons. Pa. Stat. Ann., § 2051. "Criminal Homicide  (a) Offense defined.  A person is guilty of criminal homicide if he intentionally, knowingly, recklessly or negligently causes the death of another human being. (b) Classification.  Criminal homicide shall be classified as murder, voluntary manslaughter, or involuntary manslaughter."
Ibid. § 2502. "Murder  (a) Murder of the first degree.  A criminal homicide constitutes murder of the first degree when it is committed by means of poison, or by lying in wait, or by any other kind of willful, deliberate, and premeditated killing. A criminal homicide constitutes murder of the first degree if the actor is engaged in or is an accomplice in the commission of, or an attempt to commit, or flight after committing, or attempting to commit robbery, rape, or deviate sexual intercourse by force or threat of force, arson, burglary, or kidnapping. (b) Murder of the second degree.  All other kinds of murder shall be murder of the second degree. Murder of the second degree is a felony of the first degree."
[4] Cal. Rev. Stat. § 189 provides in pertinent part as follows: "All murder which is perpetrated by means of a bomb, poison, lying in wait, torture, or by any other kind of willful, deliberate, and premeditated killing, or which is committed in the perpetration of, or attempt to perpetrate, * * * robbery * * * is murder of the first degree; and all other kinds of murders are of the second degree. * * *"
[5] Accord. People v. Gilbert, 63 Cal.2d 690, 47 Cal. Rptr. 909, 408 P.2d 365 (Sup. Ct. 1965), vacated on other gorunds 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178; Taylor v. Superior Court of Alameda County, 3 Cal.3d 578, 91 Cal. Rptr. 275, 477 P.2d 131 (Sup. Ct. 1970), and People v. Johnson, 28 Cal. App.3d 653, 104 Cal. Rptr. 807 (D. Ct. App. 1972) (recognizing rule).
[6] Section 2C:11-3 of the proposed New Jersey Penal Code, supra, provides in pertinent part as follows:

"* * *, criminal homicide constitutes murder when: * * *
(4) it is committed when the actor, acting either alone or with one or more other persons, is engaged in the commission of, or an attempt to commit, or flight after committing or attempting to commit robbery * * *, and in the course of and in furtherance of such crime or of immediate flight therefrom, he, or another participant, if there by any, causes the death of a person other than one of the participants; except that in any prosecution under this Subsection, in which the defendant was not the only participant in the underlying crime, it is an affirmative defense that the defendant:
(a) did not commit the homicidal act or in any way solicit, request, command, importune, cause or aid the commission thereof; and
(b) was not armed with a deadly weapon, or any instrument, article or substance readily capable of causing death or serious physical injury and of a sort not ordinarily carried in public places by law-abiding persons; and
(c) had no reasonable ground to believe that any other participant was armed with such a weapon, instrument, article or substance; and
(d) had no reasonable ground to believe that any other participant intended to engage in conduct likely to result in death or serious physical injury." [Emphasis supplied]
Note: Vol. II: Commentary, New Jersey Penal Code, supra, at 156-158, discusses the felony-murder provision and appears to be in line with the reasoning of the New York cases cited supra.